### J. W. DANCY v. M. STRICKLINGE AND WIFE.

The purchaser at an administrator's sale is not required to go behind the order of sale, to see that the administrator has been duly appointed and continued, and that the proceedings have all been regular.

See this case as to presumptions in favor of the regularity of the proceedings of the Probate Courts.

The decree of the Probate Court, confirming an administrator's sale, is conclusive, except on appeal or certiorari, or upon allegation of fraud in the purchase, or want of jurisdiction of the Court over the estate ; against minors as well as adults.

See this case for what is said as to how far minors are bound by the lawful acts of their guardians.

Appeal from Fayette.

*Webb & Harcourt*, for appellant.

*J. O'Connor* and *B. Shropshire*, for appellees.

WHEELER, J.    It appears that the widow of John Webster, having obtained letters of administration on the estate of her deceased husband, resigned in favor of Reece ; who was thereupon appointed in her stead, and gave bond as administrator, in 1840. Reece, however, it seems, did not proceed in the matter of the administration ; and in 1843, upon the petition of the widow, representing that she had reason to believe that Reece was killed or taken prisoner by the Mexicans, or was out of the limits of the Republic, and that he had failed to discharge his duties as administrator, there was an order of the Probate Court for his removal, and the re-appointment of the widow, to administer the estate.    It does not appear, however, that Mrs. Webster took any action in the matter ; and about a year afterwards, there was an order of the Probate Court,

by which it appears that Reece had delivered up to Mrs. Web-
ster, "the present administratrix," all the property and effects
of the estate which had come into his hands.   Nothing further
appears  touching  the  administration,  until  more  than  two
years thereafter, in September, 1846, when  there appears the
entry of an order that Reece be notified to make a full settle-
ment of his administration.   Shortly thereafter, (in January,
1847,) he was represented in Court by an attorney, and the
further action of the Court in the matter was postponed.   In
November, 1848, he appeared in Court in person, exhibited a
statement of his account as administrator, and petitioned the
Court for a settlement.   Action upon this petition was post-
poned ; and it does not appear what disposition, if any, was
finally made of it.   In January thereafter, (1849,) Reece peti-
tioned the Probate Court, as administrator of the estate, for
the sale of property ; which was ordered accordingly ; and
from this time forward, for several years, the  record presents
him as having been engaged in the administration of the estate,
making statements of his accounts, obtaining orders for the
sale of property ; and proceeding to administer and settle the
estate under the authority and sanction of the Probate Court.
The order of sale of the negro in question, and the return and
confirmation of the sale by the Probate Court were in the
early part of January, 1849.

So much of what the record of the Probate Court presents
of the history of the administration, is stated, as showing,
what indeed is very evident, that from the time of the order
for the removal of Reece, for several years, and until 1848 or
1849, the record of the proceedings of the Probate Court was
very loosely and carelessly kept.   It does not contain any con-
sistent or connected history of the proceedings.   It does not
appear what, or indeed that any decisive final action was ever
taken upon the order of the Court for the removal of Reece
and the re-appointment of Mrs. Webster.   It does not appear
that she gave bond, or, in fact, entered upon the administra-

tion; and yet the next order that appears, a year after her appointment, speaks of her as "the present administratrix." It seems evident therefore that the record cannot be relied on as presenting a full history of all that was done in the matter of the administration; if, indeed, the proceedings of the Court were conducted with any degree of regularity or propriety. And we must suppose that the Court did act properly, rather than that the Clerk did his duty in preserving a history of its proceedings; for it is a matter of fact, of which the records brought to this Court afford ample evidence, that the proceedings of the Probate Courts, in many, if not in most instances, are very defectively and imperfectly preserved and shown by the records of those Courts.

The most probable supposition is, that when Reece returned, his absence was satisfactorily explained; and that the order for his removal was revoked, or that he was afterwards reinstated in the administration; and owing to the careless manner in which the records were kept, that no record of the action of the Court in the matter was made or preserved. The record showing the order for his removal, we cannot suppose the Court was ignorant of it; or that he would have been permitted to proceed in the administration, either by the Court, or the parties in interest, if he had not been properly reinstated in his office. That such was the fact, there can be but little doubt; and we think we might be warranted in so presuming in favor of the subsequent action and repeated solemn judgments of the Court, when brought in question collaterally, in a proceeding to which the administrator is not a party. In Townsend v. Munger, (9 Tex. R. 300,) where there had been an order for the removal of an executor and the appointment of another in his place, and the Court subsequently received and allowed his account as executor, we held that it might be presumed that the order for his removal had been revoked, or that he had been reinstated in his office, (and see Thompson v. Tolmie, 2 Pet. R. 157; 11 Serg. & Rawle, 429.) It would

not be going farther to indulge a like presumption in the present case, when the authority of the administrator is thus collaterally brought in question for the purpose of invalidating the title of a bona fide purchaser, in a proceeding, in which the administrator, who might have had it in his power had his authority been questioned in proper time, cannot be called in to show his authority to act in the premises. It would be extremely unreasonable and unjust to hold the purchaser of property at a sale by an administrator, whose authority at the time was recognized by the Court, and was not, and has not been questioned in any direct proceeding having that object in view, bound, at any length of time thereafter, when his title is brought in question in a collateral action, to show that the administrator was duly and legally appointed and qualified to act as such in the particular instance. And it would be equally unreasonable and unjust to hold the innocent purchaser responsible for the errors, irregularities and omissions of the officers entrusted with the keeping of the records of proceedings in the Probate Courts, especially when it is matter of judicial and common notoriety that they have so illy and imperfectly performed that duty, in, perhaps, the great majority of cases. Some sanctity should be given to judicial proceedings; some time limited beyond which they should not be questioned for the mere errors and irregularities of subordinate officers; and some protection afforded to those who purchase at sales by judicial process. (Voorhees v. The Bank, 10 Pet. 449; Grignon v. Astor, 2 Howard, 319; Lynch v. Baxter, 4 Texas Rep. 431.)

It appears that Mrs. Webster died and administration was granted upon her estate also. The property in question was treated in both administrations as community property. The sale appears to have been made of it as such by the concurrent action of both administrators. The order of sale was regularly made upon the petition of the administrator; and a return thereof was made and confirmed by the Court. The

purchase of the property by the defendant appears to have been fairly made at its full value.   There is no pretence of any fraud or want of fairness in the sale ; and the proceeds, after defraying expenses and charges, were paid over by the administrator to the guardian of the present plaintiff ; who receipted for the money, in his capacity as guardian, to Reece, as administrator.   Reece, therefore, was not only recognized by the Court, but also by the guardian of the plaintiff as rightfully administrator.   Even if his authority could be collaterally drawn in question by any one, on account of the apparent irregularities in the proceedings of the Probate Court anterior to the order of sale and sale in this case, it cannot be by the present plaintiff, after having been thus recognized by the act of her guardian in receiving and receipting for the proceeds of the sale, with a knowledge of the character in which he was acting, and of the sale ; as appears by his receipt.   Minors must be bound by the lawful acts of their guardians or there would be no security for those who have to deal with them in the settlement of estates.

In Goff v. Goff, (14 Serg. & R. 184,) the Supreme Court of Pennsylvania said :  " There is no principle better settled, than "that the judgment or decree of a Court of competent juris- " diction cannot be questioned in a collateral suit."   " To pay " these debts, on the petition of Thomas Wenrich, the Court " ordered a sale of the lands of the testator, which sale has "been confirmed by the Orphans' Court.   This decree remain- "ing unreversed and unappealed from, the District Court " were asked, by the parties to the decree, to review the pro- " ceedings.   To permit this would render uncertain the most "solemn acts of a Court of justice, if at any time, they would " be liable to an investigation by parol testimony in a collate- " ral suit.   When agrieved the parties should appeal, or reverse " the proceedings.   And in this case it is no answer to say " that they were ruinous, and that the guardians would not " act.   If the guardians neglect or refuse to do their duty, it

"is a matter between them and their wards, with which we "have nothing to do in this suit."

In the case of Blomet v. Darrach, (Ib. n.,) the question was as to the sufficiency of a plea to a bill in equity to compel a guardian to account. The plea stated that after the death of Darrach, the guardian, of whose accounts the bill sought a settlement, his executors filed in the Orphans' Court his account as guardian; that one of the then guardians of the minor in whose right the suit was now brought by her husband, appeared before the auditors, to whom the account had been referred by the Orphans' Court; examined the account filed by the executors of the deceased guardian; altered some of the items; charged interest on monies in the hands of the guardian belonging to his ward; and that the account thus examined and altered was reported by the auditors to the Orphans' Court; and, by a decree of that Court, was allowed and confirmed; which decree remained unappealed from and unreversed on error. Mr. Justice Washington said : "The single "question arising upon the above facts (stated more at length "in his Opinion) is, whether the account of the guardianship "of James Darrach, which, by the decree of the Orphans' " Court, was allowed and confirmed, is conclusive or not, so as "to be a bar in the discovery and relief sought to be enforced "by this will? The general principles of law in respect to "the conclusiveness of the judgments and decrees of the do-"mestic tribunals of the country are well settled, and perfectly "intelligible. A judgment or decree of a Court of competent "jurisdiction, directly upon the point, is conclusive between "the same parties, and their privies, upon the same matter, "coming directly in question in another Court of concurrent "jurisdiction. This rule is founded upon considerations, as "well of abstract justice as of public policy, which forbid the "litigation of any matter which has been once fairly deter-"mined by proper and competent authority between the same "parties, or those standing in the relation of privies to them."

. " And so extensive and universal is this principle, that it in-
" cludes the judgment or determination of tribunals having
" competent authority to decide, whether they be of record or
" not." The Judge proceeds to apply these principles to the
case, and concludes : " It is probable that, in this case, the
" plaintiff, in right of his wife, might be permitted in the Or-
" phans' Court to show cause against the decree of that Court,
" rendered during her infancy, by showing specific errors in
" the account ; or that the subject might be re-examined in the
" Supreme Court by appeal or writ of error. As to this mat-
" ter, however, it would not become me to give an opinion.
" But it is clear to my mind, beyond all question, that the cor-
" rectness of the decree of the Orphans' Court cannot be ex-
" amined into by this Court, which can only claim to exercise
" a concurrent jurisdiction, to compel guardians to settle their
" accounts, where they have not done so, before some other
" competent forum." The same principle has been enunciated
by the oft repeated decisions of this Court. (Toliver v. Hub-
bell, 6 Tex. 166, and cases cited ; Poor v. Boyce, 12 Tex. R.
440 ; Howard v. Bennett, 13 Id. 309.)

It appears by the record in this case that the guardian was
cognizant of the proceedings in the Probate Court by the ad-
ministrator. By accepting the proceeds of the sale, he became
a party or privy to the proceeding. By his affirmative action,
he gave it his assent and acquiescence. He has not, nor have
the plaintiffs instituted proceedings to revise or reverse the
judgment of the Probate Court. It remains the judgment of
that Court, unappealed from and unreversed ; and cannot now
be questioned by the plaintiffs, who were thus privy to it, in
this collateral action.

It is not pretended that any fraud or deception was prac-
ticed upon the guardian ; or that if he was uninformed as to
the rights of his ward, it was in consequence of any fault of
the defendant. As a *bona fide* purchaser, under the judgment
of a Court of competent jurisdiction, without fraud or wrong,

he cannot be affected by matters outside of the record and judgment of the Probate Court, of which he had not notice. And we think it free from doubt, that, by his purchase, the confirmation of the sale by the Probate Court, and the acceptance of the proceeds of the sale by the guardian of the then minor, the wife in whose right the plaintiffs sue, he acquired a good title to the property as against the plaintiffs. The judgment is therefore erroneous, and must be reversed and the cause remanded for a new trial.

Reversed and remanded.