### STARK et al. v. OSBORN.

(Circuit Court of Appeals, Fifth Circuit. March 11, 1915. Rehearing Denied April 20, 1915.)

No. 2690.

1. EXECUTORS AND ADMINISTRATORS ☞397—SALE OF LAND—VALIDITY—PRESUMPTION IN FAVOR OF ANCIENT DEED.

An administrator in Texas sold land of his decedent in 1846; his deed reciting that the sale was made at the door of the courthouse of the county in which the estate was being administered. The land was situated in another county, and the law then required such sales to be made at the door of the courthouse in the county where the land was situated, unless otherwise ordered by the probate court. The records did not show such an order. The validity of the sale was not questioned for more than 60 years, when an heir of the decedent brought an action to recover the land. In the meantime the taxes had been paid by the purchaser and his successors in title, some of whom were in actual possession. *Held*, that under the law of Texas, as long settled by decision, in favor of an

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ancient deed, the fact that the sale was reported, that the presiding judge of the probate court took the acknowledgment of the deed on the same day, and later approved the administrator's accounts, would be taken as an approval of the sale, and a substantial compliance with the statute, and validated the deed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1598–1604; Dec. Dig. ☞397.]

2. TRESPASS TO TRY TITLE ☞44—ADMISSIBILITY OF DEED—FORGERY—QUESTION FOR JURY.

In an action of trespass to try title to a large tract of land in Texas, plaintiff's evidence was to the effect that the original Mexican grantee died in Texas in 1839, and the records showed that his estate was there probated shortly thereafter. Some of the defendants, claiming parts of the tract by adverse possession, offered in evidence a deed purporting to have been executed by the original grantee in 1860, under which, through mesne conveyances, they had been in possession for nearly 50 years. There was no evidence of the identity of the grantor, except the recital in the deed itself. *Held*, that such deed could not be declared a forgery as matter of law, but that it should have been admitted in evidence and the issue submitted to the jury.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 112–115; Dec. Dig. ☞44.]

In Error to the District Court of the United States for the Eastern District of Texas; Gordon M. Russell, Judge.

Action at law by Mrs. Rosa P. Osborn against W. H. Stark and others. Judgment in part for plaintiff, and certain defendants bring error. Reversed.

Mrs. Rosa P. Osborn brought this suit under statutory allegations in trespass to try title for the recovery from W. H. Stark and others of 1,107 acres of land in Orange county, Tex., comprising the John M. Henrie headright. All the land in said grant, except 397 acres off the north side thereof, was recovered by the defendant below under the statutes of limitation; and it is agreed that the judgment is proper in so far as said award is made in favor of said defendant, and the only issues involved upon this writ are confined to the recovery by the plaintiff, upon peremptory instructions from the court, of the remaining 397 acres.

The plaintiff, to support the issue upon her part, offered a certified copy of the original grant to John M. Henrie, dated March 30, 1835, reciting that Henrie was a farmer and stockraiser, and granting him the land in controversy. She also testified in person as follows: "My name is Rosa P. Osborn. I am a widow. My father's name was William C. Duffield, and my mother's name was Priscilla Duffield. My mother had been married, before she married my father, to a man by the name of John M. Henrie, and she had one child by her first marriage, which survived its father, John M. Henrie. My mother and John M. Henrie were married at Nashville, Tenn., and said John M. Henrie died about the year 1839. My mother married William C. Duffield about 1841, and I was born about 1846. My information that John M. Henrie died about 1839 was obtained from my mother, from family history —just family history is all I know about it. After my mother's marriage to John M. Henrie, they came to Texas, and from there they went to New Orleans, and lived there a short time. I am telling you this as my mother told me. My grandfather, Geo. Antonio Nixon, had him give up his business and come to San Augustine, Tex. My grandfather, Geo. Antonio Nixon, who was my mother's father, was the same party whose name runs through the records here in Texas. I was reared in Mississippi. My present home is in Biloxi. I have lived there 18 years, and have lived at other places—among them are Brandon, Vicksburg, Clinton, and Bay City. I knew the father, mother, grandfather, and grandmother of my attorney, Mr. Clark. The John M. Henrie

which I mentioned was my mother's first husband, and he died leaving one child by the name of George A. Henrie, which child was named after its grandfather. Said child died at San Augustine, Tex., and that was the only child said John M. Henrie left. This child died, and my mother married my father, Mr. Duffield. My father and mother had three children, myself and a brother and sister, both older than me. They are dead. My mother is dead. She died in Louisiana in 1861, during the war. We refugeed there during the war. I am the plaintiff in this case."

The defendants deraigned title under deed of J. M. Henrie, a resident of Sabine parish, La., dated 1860, reciting himself to be the person to whom the land in controversy was granted by the Mexican government, and conveying to Josiah Bell the said land, which deed was duly recorded in volume D, pages 127 to 129, of the deed records of Orange county. They also introduced a deed from Josiah Bell, dated January 12, 1861, conveying the property in question to S. Melton, which deed is recorded in Volume D, pages 135 and 136, of the deed records of Orange county, Tex., June 27, 1862; and it is admitted that each and all the defendants hold title under said Josiah Bell and the said S. Melton by regular chains of title to themselves. It was shown that S. Melton, through whom said defendants deraigned title, was district clerk of Orange county, and afterwards a school-teacher, and was a man of good reputation. There was nothing in the evidence to show any personal claim to the land by J. M. Henrie, of Sabine parish, La., except by his sale of it, and the recital of his deed that it was deeded to him by the Mexican government. Since the date of this sale, however, it is undisputed that parts of the land have been held under continuous possession, assertion of ownership, and payment of taxes under his title, unchallenged, for at least 50 years.

On the other hand, there is nothing to connect the John M. Henrie, under whom the plaintiff claimed, with the land in controversy, except an inventory of lands as part of his estate, and a sale of said land by an administrator, all in San Augustine county, republic of Texas. It is shown, however, that there has been no open claim under him for almost 50 years. After the San Augustine John M. Henrie died, this land was sold by his administrator, A. W. Canfield, to R. B. Russell on April 7, 1846, and on May 2, 1846, Russell conveyed the land to Canfield for a recited consideration of $1,000, and on June 5, 1846, Canfield conveyed to Daniel McLeod for $2,750. This suit was filed October 15, 1913, and prior to its institution McLeod's heirs brought suit against the defendants to recover the land, and on January 27, 1913, the heirs executed by way of compromise, a deed to the defendants by which the latter acquired such title as passed by the deed of Canfield, administrator, to Russell. This said probate sale was conceded to be legally sufficient in all things, except that it was contended that same was invalid, because the sale was found by the court to have been made at the courthouse door of San Augustine county, where the proceedings were pending, rather than at the courthouse door of the county in which the land was situated.

In addition to these two titles, it was proved by uncontroverted evidence that B. D. Harris held the 197-acre tract in continuous inclosure, occupancy, use, and enjoyment, under duly registered deed, and accompanied with the yearly payment of taxes, for more than 5 years prior to the institution of this suit, and after plaintiff's disabilities were removed. So it seems that the defendant had two record titles to all of the land in controversy, and claimed a limitation title to 197 acres of it. If the Louisiana J. M. Henrie, under whom the sole possession had been held and assertion of ownership made, was the grantee of the land, as claimed by him, then the plaintiff is not connected in any way with the title, and ought not to recover. If the probate sale of interest (if any) of the estate of the San Augustine county John M. Henrie was valid, then there was nothing for the plaintiff to recover under the said John M. Henrie, and if B. D. Harris was given the benefit of his possession and limitation under the five-year statutes, plaintiff should not have recovered that tract.

The judgment of the court is based upon a peremptory instruction to the jury, directing them to bring in a verdict for the plaintiff for all of the 397 acres held in question, and said peremptory instruction seems to be based on

the following reasons: (a) That the deed from J. M. Henrie, executed in Louisiana in 1860, was void as a matter of law, because there was no proof as to what John M. Henrie executed the same. (b) That the San Augustine county J. M. Henrie was the one to whom the land was titled as a matter of law, and the issue of identity was not for the jury. (c) That the probate sale of San Augustine county J. M. Henrie was void, because the sale should have been made at the courthouse door of Jefferson county (in which county the land was situated), rather than at the courthouse door of San Augustine county, where the administration was pending. (d) That B. D. Harris could not mature title under the five-year statute of limitations, because he claimed under the deed from the Louisiana J. M. Henrie, which the court found as a matter of law to have been a forged instrument.

Upon the question of the validity of the probate sale in San Augustine county, the defendant offered the probate records and filed papers affecting the said sale as follows:

Petition for letters of administration, filed in office July 26, 1839.

An order dated August 27, 1839, appointing Priscilla A. Henrie administratrix of the estate of J. M. Henrie, same being recorded in Book A, page 65, of the Probate Minutes of San Augustine county.

Original papers filed in the probate court of San Augustine county, February 22, 1840, by which James Tabor applied for letters of administration of the estate of J. M. Henrie, "filed this 22d Feby., 1840" (from original paper on file).

An order recorded in Volume A, page 103, of the Probate Records of San Augustine county, vacating the administration of Mrs. P. A. Henrie.

An order recorded in Volume A, page 105, of the Probate Minutes of San Augustine county, allowing a claim against the estate of J. M. Henrie for $200 in favor of J. B. Ferguson, and another in favor of A. B. and C. F. Terry in the sum of $254.35.

An application filed by A. W. Canfield in the probate court of San Augustine county, January 14, 1844, reciting the death of James Tabor and applying for the appointment as administrator de bonis non of the estate of J. M. Henrie, same being recorded in Book A, page 300, of the Probate Minutes of San Augustine county.

An order of the probate court of San Augustine county, Texas, appointing A. W. Canfield administrator de bonis non of the estate of J. M. Henrie, which said order is recorded in Book A, page 300, of the Probate Minutes of San Augustine county.

The oath of A. W. Canfield as administrator de bonis non of J. M. Henrie, deceased, filed in the probate court of San Augustine county on April 29, 1844.

Letters of administration appointing A. W. Canfield administrator de bonis non of the estate of J. M. Henrie, as shown by Book A of the Probate Records of San Augustine county.

An application of A. W. Canfield, administrator de bonis non of the estate of J. M. Henrie, asking authority to sell land belonging to the said estate, same being filed on January 23, 1844.

An order of sale entered by the probate court of San Augustine county, Tex., on June 24, 1844, recorded in Volume B, page 110, of the Probate Minutes of the probate court.

A report of sale filed by A. W. Canfield on April 8, 1846, which is an original paper on file in San Augustine county, which said report of sale is as follows:

"Account Sales.

"One-fourth of a league of land belonging to estate of John M. Henrie, deceased, to wit: One-fourth of a league of land lying on Cow Bayou adjoining Jas. Dyson's land—appraised at 50 cents per acre.

"Sold on first Tuesday, 7th April, A. D. 1846, to Robt. B. Russell, 12 Mo. credit for three hundred and sixty-eight dollars.

"A. W. Canfield.

"Attested before me this 8th April, 1846.
                    "Charles Eppes, C. P. C.

"Filed April 8, 1846."

A petition filed by Priscilla Ann Duffield in the probate court of San Augustine county on the 30th day of February, 1847, which is as follows:

"Petition of Priscilla Ann Duffield.

"The State of Texas, County of San Augustine.

"Estate of John M. Henrie.

"To the Hon. Alfred Polk, Judge of Probate in and for the County of San Augustine:

"The petition of Mrs. Priscilla Ann Duffield, late widow of John M. Henrie, deceased, respectfully represents to your honor that as the widow of said Henrie she is entitled by law to certain property out of said estate, which said estate is yet in court and unsettled. She further represents that of the property she is entitled to there is none in kind, there is no homestead, no house and lot, no household furniture, no horses or anything in kind which the law gives to the widows of all persons whose estates have not been settled up. The premises considered, she prays your honor to order the administrator of said estate to pay her the amount of said property which she was entitled to as her portion by law, the law having in such cases provided that when there is no property in kind the widow is entitled to the amount in cash.

"And she further represents to your honor that as yet she has received nothing from said estate, and that said Henrie died leaving one child, and that your petitioner has been dependent on her father for the support of herself and her said child since the death of said Henrie, and have received no part or portion of said support from said estate. Your petitioner therefore prays for such equity and justice in the premises that she is entitled to, and your petitioner will ever pray, and asks that the sum of one thousand dollars be paid to her in cash by the administrator of said estate.

"P. A. Duffield.

"Filed Feb. 13, 1847.
"Charles Eppes, C. C. C.
"Granted March 31st."

Defendants next offered in evidence an order allowing the said petition of said Priscilla A. Duffield, which is as follows:

"Estate of John M. Henrie.

"Priscilla Ann Duffield, having filed her petition for her allowance as widow of the said John M. Henrie, deceased, the premises considered, it is ordered by the court, that the administrator of the said estate pay over to the said Priscilla Ann Duffield, formerly Priscilla Ann Henrie, the amount she is entitled to by the statutes in money, there being no such property belonging to the said estate as pointed out by the statutes in such cases made and provided."

Defendants then offered deed from A. W. Canfield, administrator of the San Augustine county J. M. Henrie, to R. B. Russell, as follows:

"The State of Texas, County of San Augustine.

"Know all men by these presents: That whereas, at the April term, A. D. 1844, of the Hon. Probate court of said county, Alansan W. Canfield was duly and according to law appointed administrator de bonis non of the estate of John M. Henrie, late of said county, deceased; and whereas, to wit, afterwards, at the June term, A. D. 1844, of said court, an order was made by said court directing the sale of the real estate belonging to the said estate, a part thereof being one-fourth of a league of land, the headright of the said John M. Henrie; and whereas, the said A. W. Canfield, administrator as aforesaid, in pursuance of an order so issued and to him directed, advertised the said real estate belonging to the succession of said John M. Henrie, including said quarter of a league of land, according to law, and afterwards, to wit, on the first Tuesday in April, A. D. 1846, at the courthouse door in the county aforesaid, offered the same at public auction, at which sale so made as aforesaid Robert B. Russell, of said county, among others, became a bidder, and having offered the sum of three hundred and sixty-eight dollars, and being

221 F.—36

the last and highest bidder, and the amount bid being fully two-thirds of the appraisement of said land, he became the purchaser: Now, therefore, know all men by these presents, that I, A. W. Canfield, administrator as aforesaid, in consideration of the premises and the said sum of three hundred and sixty-eight dollars to me in hand paid by the said Robert B. Russell, have bargained, sold, aliened·and conveyed, and by these presents do bargain, sell, and convey, unto the said Robert B. Russell, all that certain tract, survey, or parcel of land known as the headright of the late John M. Henrie, consisting of one-fourth of a league situated and lying on Cow Bayou, in the county of Jefferson, fronting on said bayou, and adjoining land granted to James Dyson, as the accompanying grant and map from the Commissioner of Zavalla's Colony (and of which record is given) will more fully show. To have and to hold all and singular the rights, hereditaments, and appurtenances to the same belonging or in any wise incident or appertaining unto the said Robert B. Russell, his heirs, executors, assigns, or successors forever. And I, the said Canfield, as administrator aforesaid, do hereby relinquish and transfer by this conveyance all the right and interest of said estate in or unto said land to the said Robt. B. Russell, and do warrant and defend the right to the same against any and all of the heirs of said estate or any person whatsoever claiming under, by, or through them.

"In testimony whereof, I have hereunto set my hand and seal (a scroll) this seventh day of April, in the year of our Lord eighteen hundred and forty-six.              [L. S.]                    Alansan W. Canfield.

"Administrator De Bonis Non of the Estate of John M. Henrie.

"The State of Texas, County of San Augustine.

"Personally appeared before. the undersigned authority A. W. Canfield, administrator de bonis non of the estate of John M. Henrie, whose signature appears to foregoing deed, and who acknowledged the same to be his voluntary act and deed for the uses and purposes therein contained and specified.

"Given under my hand and seal of office this 7th day of April, 1846.

"Alfred Polk, Chief Justice."

The record shows that upon the offer of said deed in evidence the plaintiff objected, on the ground that the deed on its face shows that it is a nullity, because the land was sold by an administrator in San Augustine county, when under the law in force it was required to be sold in the county where the land was situated, to wit, Jefferson county; the sale, being made at any other time or place than that which the law directs, would not be merely irregular, but an absolute nullity. And the trial court having considered said objection, sustained the same, and excluded the said deed from evidence, upon said objection, to which action of the court the defendants then and there excepted.

The defendants then offered in evidence an order of the probate court of San Augustine county, entered January 27, 1847, and recorded in Volume B, page 96, of the Probate Minutes of San Augustine county as follows: "Estate of John M. Henrie. It is considered by the court that the report this day made by A. W. Canfield of his administration upon said estate be recorded."

John H. Broocks testified as follows: "My name is John H. Broocks. I am 52 years of age. I reside at San Augustine, Tex. I left there and came here when I was 29 years old, and I don't believe I have been away more than four months since that time. I moved back six or seven years ago. I have been a land dealer and had a license to practice law. I have been engaged in dealing in land and inspecting the records of San Augustine county. I have had occasion to examine the probate records of that county. I know the condition of the probate record in reference to the file of papers, records, etc., especially·since 1898 to 1899. In 1899, I think it was, the courthouse and records were burned. The courthouse was burned, and there was a great big fire in town, and the records were scattered about there considerably, and I don't think they have all been found; a kind of general mixture of file papers. I have examined the papers of many estates in·that county. I do not think that the papers generally are intact; that is my general impression, and I judge that from rather intimate knowledge of the records there. In the first place, as I remember it, and I think it is true, for a great many years

there was a little wooden desk in the clerk's office unlocked, and as a general thing the probate papers were loose in this little desk. It was unlocked, and there was no apparent supervision over it. Any one could go there and examine them that wanted to. When we had the fire in 1889 and were building a new courthouse, and the records removed to a box house, and they were scattered, and I don't think they have ever been as carefully put away as before the burning of the building. I saw a lot of old papers I had seen about the courthouse before the fire, with fire marks on them, lying about the streets. I want to say that I never saw any probate papers lying on the street, but papers that looked familiar to me. Subsequent to that time I could not particularize any estate, but I can say generally the papers are very loosely kept." Cross-examination: "I have no personal knowledge of any of the papers of the estate of J. M. Henrie having been lost. The minute books were not kept in this wooden desk. The minute books of the probate court are intact, but they are very badly worn. They are old. I think there are some obliterations, but as a general thing you can read them. The minute books have never been destroyed."

S. W. Blount testified as follows: "I would say that I am familiar with the records of San Augustine county. I have known them for 40 years. With reference to the file of papers at the present time in estates generally there, the old estates settled in the 30's and 40's, as a rule I found the papers in very good shape—as a rule. In some of the very oldest estates some of the papers are missing. I can call to mind a matter recently. The Quirk estate, which is perhaps the first estate opened in that county, some of the papers are not there. In the very oldest estates some of the papers are missing, papers in estates between '32 and '33 and '40. I have found in looking some of the very old papers over pertinent to very old administrations, I sometimes did not find the papers I thought ought to be there. As far as my experience goes the minutes of the court in reference to administration of the '40's are in very good shape. I don't mean they are as carefully kept as some records, but the papers are most all there. As a rule I found all the papers I thought ought to be in an estate. They are all separate packages. My recollection is that Mr. Crockett was clerk 24 or 25 years ago. He went through the old papers; most of them were loose and not in packages, and he went through them and sorted them out. Prior to that time they had been kept in wooden pigeon holes on the wall marked 'A,' 'B,' 'C,' etc., and all the names of estates beginning with 'A' in the 'A' box, those beginning with 'B' in the 'B' box, etc. I don't recollect that I ever saw one of the reports of administrators out of place, but I would not say they were not. I would not say that I did not find all of the orders entered on the minutes as should have been, because the minutes were very well kept and all the books are there I think. The first probate book there is in my father's handwriting, and he was the first clerk of the county; Book A of the Probate Minutes. It is still intact, but badly worn. I never did investigate the papers or minutes generally. I had papers involving a certain administration; I investigated those papers. I have never investigated, and don't know, generally, the condition of the records. Only such idea as I got from investigating a particular estate; the Quirk estate was one of them. That was the last estate I investigated, and I found those papers were not all there. I investigated the Waterhouse estate, which was of date of about 1876, and the papers seemed to be intact. I have not recently made any investigation of any old estate except the Quirk estate." Cross-examination: "I have been an active practitioner of law at San Augustine bar for a number of years; about 38 years. The minutes of the probate court in which the orders of the court are kept have never been destroyed. They are intact as far as having been destroyed and burned is concerned. I am not as familiar with the records of other counties as of San Augustine county, and I could hardly say as to whether they compare favorably with other counties in which I have practiced law as to regularity. I met the plaintiff, Mrs. Osborn, last night. I know her family by reputation and condition. They left there before I was born. I heard my father and mother and lots of people talk of Wm. P. Duffield as a prominent lawyer of San Augustine. I have always understood that he married."

The record further shows that after the close of the testimony, and before the jury retired, defendants asked the judge in writing to give to the jury the following instruction: "Come now each and all of the defendants in the above entitled and numbered cause and respectfully move the court to direct the jury to bring in a verdict for them and each of them, because under the uncontradicted evidence and the law applicable thereto they and each of them are entitled to a verdict in this cause." And the court having considered the said charge, then and there refused to give the same to the jury, and the defendants and each of them then and there excepted to the action of the court in refusing to give said peremptory instructions. And thereupon the defendants in writing requested separately the following instructions:

"If you should believe from the evidence that the sale of the land by A. W. Canfield, administrator, was made at the courthouse door of San Augustine county, under an order issued by him, by the probate court, so directing the same, which order was in existence at the time of the sale, then such sale would be valid and pass the title, and in determining whether such order ever existed you may look at the recital in the deed and all the other facts and circumstances in evidence before you."

"If you should find from the evidence that the sale of the land in controversy by A. W. Canfield, administrator, to Robt. Russell, was approved by the probate court of San Augustine county, after the same was made, such approval would make such sale valid; and in determining whether such sale had been approved you may take into consideration all reports and orders of said probate court in evidence and all acts of the judge thereof shown in evidence."

"If you should find from the evidence that the J. M. Henrie of Louisiana, who deeded the land in controversy to Josiah Bell, was the J. M. Henrie to whom the land was granted, then plaintiffs cannot recover, and the burden of showing this land to have been granted to some different J. M. Henrie is on plaintiff."

"If you believe from the evidence that P. A. Duffield, the mother of plaintiff, applied for an allowance of money, and received such allowance from the probate court of San Augustine county, in the estate of J. M. Henrie, after the sale of and payment for the land in controversy by the administrator, then plaintiff cannot recover."

Each of said special requests was refused, and exceptions were duly taken to the refusal. Thereupon the court charged the jury to the effect that the deed made by A. W. Canfield, administrator de bonis non of the estate of J. M. Henrie, executed April 7, 1846, was void, because it appeared from said deed that the sale was of land located in Orange county, and that therefore said deed did not divest title out of the estate of J. M. Henrie, and that the deed under which the defendants also claimed title, and executed in Louisiana before a commissioner of the State of Texas by one John M. Henrie, November 10, 1860, was void, because there was no proof as to what John M. Henrie it was who executed the said deed, and peremptorily directed the jury to find as a matter of law a verdict for the plaintiff for 397 acres of the land in controversy.

The defendants, before the jury retired, entered full and specific exceptions to the charge of the court in the above respect, and with such particularity as to point out to the trial judge the errors alleged in said charge.

Oliver J. Todd, of Beaumont, Tex., for plaintiffs in error.

H. M. Whitaker, of Beaumont, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The defendants [1] have assigned numerous errors to the rulings of the court,

---

[1] NOTE.—For convenience the plaintiffs in error, defendants below, will be referred to as defendants, and the defendant in error, plaintiff below, as plaintiff.

but, in the disposition of the case, it is deemed necessary to consider only the two following questions:

1. Was the deed of Canfield, administrator of the estate of John M. Henrie, to R. B. Russell, admissible in evidence?

2. Upon the trial, the court held that the deed executed by J. M. Henrie—who will be designated as the Louisiana Henrie, to distinguish him from the San Augustine John M. Henrie—to Josiah Bell was void on its face, and thereby deprived the defendants of the right to rely upon the deed in support of their defense of the five-year statute of limitations. Was such ruling correct?

[1] As to the first question: The recitations of the administrator's deed disclosed that the sale of the land in controversy was made at the courthouse in San Augustine county; and the court held that, since the land was situated in Jefferson (now Orange) county, the sale, in the absence of an order of the probate court otherwise directing, could only lawfully be made in the county last named, to wit, the county of Jefferson. In construing the Acts of the Republic of Texas of January 21, 1841, February 4, 1841, and January 27, 1842, the court in its charge observed:

"The statutes I have read fail to state in any positive way that the sale shall be made in the county where the lands are located; but the Supreme Court of the state, in construing the various statutes, have read into them their understanding of them, and it has become the law since then that valid sales of land, unless directed to be made otherwise, whether made by an administrator or under execution, shall be made in the county where the land is located. It is recited in the administrator's deed, offered in evidence, that the sale was made in San Augustine county, while the land was located in Orange county. The court, therefore, informs the jury that the administrator's deed did not divest the title out of the estate of John M. Henrie," etc.

Entertaining that view of the law, the court held that the administrator's deed was inadmissible in evidence, and thus in effect withdrew from the jury all consideration of the probate proceedings, upon which the defendants partly relied to defeat the plaintiff's cause of action. It is apparent that, if the administrator's deed was effectual to vest in the vendors of the defendants the title of the John M. Henrie estate to the lands in controversy, the plaintiff was without right to recover. As we have shown, the deed was excluded on the ground that the sale, in the absence of an order of court otherwise directing, should have been made in Jefferson county, for the reason that the land was there located. In its charge to the jury the court did not refer specifically to any decisions of the courts of Texas sustaining the ruling; nor have counsel for the plaintiff called to our attention any case which invalidated an administrator's sale of land, made at the courthouse door of the county in which the administration proceeding was pending, or in the county where the sale took place, solely because it was not made in the county where the land was situated. It is an express direction of the act of 1842 that:

"All sales of land * * * shall be made at the courthouse door of the county in which the sales take place."

And by the act of January 21, 1841, it is provided:

"That real estate shall be sold at the courthouse of the respective counties, unless an order of court be had to sell at some other place."

These Acts of the Republic were under discussion by the court in Peters v. Caton, 6 Tex. 554. In that case the sale was made at De Kalb, a place other than the county seat, and the court, in holding the sale void, stated the question at page 557 in the following language:

"The order of the court gave no specific directions as to the place of the sale; and the administratrix had no authority, by virtue of the decree, to expose the property to sale at any other than the place and the time fixed by law; and the question is whether, for the failure to comply with the requisites of the law in the particulars specified, the sale is void and conferred no title."

This decision was rendered in 1851, only a few years after the passage of the acts construed by the court, and it appeared that the sale was not made at the courthouse of any county, nor was there an order of court directing it to be made elsewhere. While the court held the sale in the circumstances void, it was further observed by the Chief Justice at page 559:

"That an executor or administrator, in making sales of property, must comply in all essential particulars with the statutory provisions regulating the subject-matter, is well settled. Otherwise, those whose interests are affected, will not be concluded by the sale (7 Mass. 488), unless from a long acquiescence a compliance with the requisites of the law may be inferred."

In addition to Peters v. Caton, counsel for the plaintiff rely, among others, upon Howard v. North, 5 Tex. 310, 51 Am. Dec. 769, Alred v. Montague, 26 Tex. 735, 84 Am. Dec. 603, Casseady v. Norris, 49 Tex. 613, and Sinclair v. Stanley, .64 Tex. 72, which were sales made by sheriffs and United States marshals in counties other than those in which the lands were located. In those and similar cases the sales were held void, and doubtless quite properly so; but they are scarcely pertinent to the present inquiry. The principal question which confronts us in the present case is whether, after the lapse of nearly 70 years, the court will indulge presumptions to sustain the validity of the sale made by the administrator.

Before adverting to the authorities, a résumé of the salient points of the testimony, as disclosed by the record, will prove useful.

John M. Henrie died in 1839. After his death applications to administer upon his estate were made by his surviving wife and by James Tabor. The order appointing Mrs. Henrie administratrix was subsequently canceled. On January 14, 1844, A. W. Canfield of San Augustine county, filed an application in the probate court, reciting the death of James Tabor, and applying for the appointment as administrator de bonis non of the Henrie estate, and an order was duly entered appointing Canfield administrator. After taking the usual oath, letters of administration were duly issued to Canfield. On January 23, 1844, Canfield, as administrator, applied to the court for authority to sell land belonging to the estate; and on June 24, 1844, an order was duly entered by the court authorizing the sale. Canfield, as administrator, sold the land in controversy on April 7, 1846, and executed a deed to Robert B. Russell to the same for a consideration of $368. The acknowledgment of the deed from Canfield to Russell was taken before the chief justice of San Augustine county on the day of the sale. On April 8th, the day following the sale, Canfield filed his report in the

probate court of the sale made by him to Russell. On February 30, 1847, Mrs. Priscilla A. Duffield, former wife of John M. Henrie, applied to the probate court of San Augustine county for a widow's allowance out of the estate, and her application was allowed therefor. There is nothing in the record to show that Mrs. Duffield ever obtained from the estate the allowance applied for. On January 27, 1847, the following order was entered in the minutes of the probate court of San Augustine county:

·"The Estate of John M. Henrie.

"It is considered by the court that the report this day made by A. W. Canfield of his administration of said estate be recorded."

It is further shown by the record that on May 2, 1846, Russell conveyed the land to Canfield for a recited consideration of $1,000, and on June 5, 1846, Canfield conveyed to Daniel McLeod for $2,750. The present suit was filed October 15, 1913, and prior to its institution McLeod's heirs brought suit against the defendants to recover the land. Pending that litigation, on January 27, 1913, the heirs executed, by way of compromise, a deed to the defendants, by which the latter acquired such title as passed by the deed from Canfield, administrator, to Russell. It is further shown by the record that no open claim to the land has been made by Mrs. Duffield or her heirs from 1847 until just before the present suit was filed in 1913, covering a period of over 60 years, nor have any taxes been paid on the land by the plaintiff either before or after her assertion of claim.

What rule should be applied to the foregoing facts? The courts of Texas supply a conclusive answer. However, before proceeding to the authorities, and in this connection, it may be said that the sale made by Canfield to Russell was conceded to be in all respects legally sufficient, except that counsel for the plaintiff contended it was invalid, because not made in Jefferson county where the land was situated. This contention necessarily presupposes the nonexistence of an order by the probate court to make it in San Augustine county. And, narrowing the question, if there was an order of court authorizing the sale in the last-named county, or, if such an order may be presumed in view of the long lapse of time and other facts and circumstances appearing of record, it would naturally follow that the sale was valid and vested the title of the Henrie estate in Russell, the purchaser.

Let us now refer to the decisions of the Texas courts. In Baker v. Coe, 20 Tex. at page 435, the court said:

"The question upon this appeal is whether the curator's sale and deed, of the 15th of November, 1834, was rightly held by the court valid and effectual to pass and vest title in the purchaser. And we are of opinion that it was. It was executed before the judge, and it therefore evidences his authorization and approval of the sale. It is to be deemed in the nature, in so far, of a judicial act, and affords prima facie evidence, at least, of the truth of the facts it recites. It affords all the proof that ought, at this day, to be required of the legality of the sale."

And at page 437 the court used the following language:

"The absence of the order of sale in this case, as was said by the same court in a later case, 'when applied to these ancient proceedings, raises but a remote presumption, which we hold to be subordinate to the violent legal

presumption that the judge before whom the proceedings were had did his duty.' 3 Ann. 147. We have heretofore had occasion to notice with what indulgence the courts of other states have regarded the proceedings of their courts of probate, when it was proposed to annul titles fairly acquired under them, because their records did not show a compliance with all the requirements of the law in respect to the disposition of the estates of deceased persons. Burdett v. Silsbee and Dancy v. Stricklinge, 15 Tex. 557 [65 Am. Dec. 179]; Soye's Heirs v. Maverick, 18 Tex. 100. Presumptions must be indulged in favor of those proceedings, especially when they are ancient, and titles have been acquired and transmitted under them, or it would indeed be true that time, instead of healing, as it should, the defects of these titles, would gradually undermine, and eventually destroy them. The judgment is affirmed."

It was said by the court in Neill v. Cody, 26 Tex. 290:

"A confirmation of the sale, or something from which a confirmation might be inferred, or, at least, something done by the purchaser giving him the right to have the sale confirmed, must have been shown to enable him to claim title under it."

See, also, Moody v. Butler, 63 Tex. at page 212.

In Robertson v. Johnson, 57 Tex. 66, it was said by the court:

"To constitute a valid sale of land by a guardian, so as to invest title in the purchaser, it does not admit of doubt that the court must have in some way or other recognized the sale as fairly made and at a reasonable price. A formal order of court, expressly confirming the sale and directing title to be made, is not essential. But if such acts are shown upon the part of the court as would satisfy the jury that the court recognized and acquiesced in it as a completed sale, when the purchase money had been paid and the deed executed, they might infer a confirmation by the court. Under the instruction given, the jury might well have drawn the conclusion that the burden was upon the appellants to satisfy them in some way that a formal order of confirmation had been made by the court. While a confirmation is essential to the validity of such sales, owing to the loose and irregular manner in which such business has heretofore been conducted in our probate courts, in the very nature of things considerable indulgence in presumptions must be allowed in support of the proceedings of these courts."

In Cruse v. O'Gwin, 48 Tex. Civ. App. 52, 106 S. W. at page 759, the Court of Civil Appeals, while holding in that case that there was no confirmation of the sale, and nothing from which a confirmation could be inferred, and nothing done by the purchaser giving him the right to have the sale confirmed, used this language:

"Even though there was no entry in the record books of the probate court tending to show that an order of sale was issued to the permanent administrator, or tending to show an approval of the sale made by him, still, if there was anything written on any paper filed in the case in the probate court that directly or indirectly indicated approval of the sale by the probate court, we would sustain its validity under the authority of decisions of the Supreme Court. Neill v. Cody, 26 Tex. 286; Moody v. Butler, 63 Tex. 210."

And in Pendleton v. Shaw, 18 Tex. Civ. App. 456, 44 S. W. at page 1010, it was said by the Court of Civil Appeals:

"If any confirmations of sale were required at the date of the sales, the evidence shows compliance in approving the account of the administrator showing the sale. Ferguson v. Templeton (Tex. Civ. App.) 32 S. W. 148–151; Bartlett v. Cocke, 15 Tex. 471. It is sufficient confirmation if the court recognized sales. Robertson v. Johnson, 57 Tex. 66; Moody v. Butler, 63 Tex. 212; Neill v. Cody, 26 Tex. 289. All reasonable presumptions will be indulged, in favor of these ancient deeds, that everything necessary to be done to perfect

the sale was properly done, if nothing appears to impeach its fairness. White v. Jones, 67 Tex. 638–640, 4 S. W. 161, and authorities cited; Bartlett v. Cocke, supra."

In Turner v. Pope, 137 S. W. at page 423, the court held as follows:

"At the time this sale was made, the law governing administrator's sales in the republic of Texas did not require such sales to be confirmed by the probate court, there being no statute requiring such confirmation until 1846. Harris v. Brower, 3 Tex. Civ. App. 649, 22 S. W. 758; Williams v. Cessna, 43 Tex. Civ. App. 315, 95 S. W. 1106. If the law was otherwise, we think the record in this case shows a sufficient order of confirmation by the court ordering the sale. In the absence of any statute requiring such order to be made in open court, and entered in the minutes of the court, any memorandum of the probate judge, made by him officially, which shows that he approved the sale made by the administrator should be held sufficient. The record shows that the judge of the court that ordered the sale took the acknowledgment of the administrator to the deed conveying the property to the purchaser at such sale, and the certificate of acknowledgment, made and signed by him officially, after proper recitation of the acknowledgment of the deed by the administrator, contains the following: 'It is therefore decreed that the foregoing deed be according to law.' Such an order was no necessary part of the certificate of acknowledgment, and should not be presumed to have been made by the judge in his capacity of an ex officio notary public, but in his judicial capacity, and was intended as a judicial approval and confirmation of the sale."

It was said by Judge Pleasants, speaking for the Court of Appeals in Ferguson v. Templeton, 32 S. W. at page 151:

"We think the order, taken with the application referred to in the order, is sufficiently definite to validate the act of the administrator in making the sale; and, while there is no formal order of the court confirming the sale, the approval of the final account of the administrator, and his discharge and that of his sureties, is, in our judgment, a substantial compliance with the law requiring an order of confirmation."

In Perry v. Blakey, 5 Tex. Civ. App. 336, 23 S. W. at page 807, the following language was employed by the court:

"At the time of the trial the deed in question was 41 years old. It had stood all these years unassailed by the parties interested in the estate. The administration under which it was made was shown to have been carelessly carried on, and it is not likely at this late date that full proof can be made of the probate proceedings. It is the policy of the law to uphold the proceedings of our probate courts. They are courts of record of general jurisdiction in all matters relating to administration of estates of deceased persons, and its judgments in such administration of estates, intrusted to its control by law, are to be regarded, in collateral actions attacking their validity, as entitled to the same presumptions as the judgments of any other court of record of general jurisdiction. Guilford v. Love, 49 Tex. 719."

See, also, Dancy v. Stricklinge, 15 Tex. 557, 65 Am. Dec. 179.

Authorities upon the question might be multiplied, but it is useless to refer to others.

In the case before us the administrator reported the sale to the court the day after it was made, and the chief justice of the county (presiding judge of the probate court) took the acknowledgment to the administrator's deed. Without more, after the lapse of more than 60 years, the court may readily indulge two presumptions: (1) A ratification and confirmation of the sale; and (2) an order duly made by the probate court authorizing the administrator to sell the land in San

Augustine county. Upon reason, and in view of the foregoing authorities, we entertain no doubt that the sale made by the administrator to Russell was valid, and that it vested in the latter the title of the Henrie estate to the land in question.

[2] As to the second question: Did the court err in holding that the deed from the Louisiana J. M. Henrie to Josiah Bell was void as a matter of law. We deem it unnecessary to enter upon an elaborate discussion of this phase of the case. Unless this deed was a forgery, the defendants could have availed themselves of it, with the other incidents which the law prescribes, as a defense under the five-year statute of limitations. Hunter v. Nichols, 55 Tex. at page 230, and authorities cited. Apart from the fact that the Louisiana Henrie executed the deed to Josiah Bell, the record is silent as to his identity. Who he was, whence he came, or whither he went, we are not informed. It may be that he sold land to which he was not entitled, although having the same name as the John M. Henrie of San Augustine, Tex. But, be that as it may, we are of opinion that the issue of forgery vel non should have been, under appropriate instructions, submitted to the jury, particularly since a part of the land in controversy has been for nearly 50 years in possession of some of the defendants, who, during that long period, have claimed title under the Louisiana Henrie deed.

It follows from what has been said that the ruling of the court in reference to the two deeds mentioned was erroneous. The suit was brought by the plaintiff against sundry defendants to recover 1,107 acres of land. Following the verdict, judgment was rendered in favor of all defendants except W. H. Stark, B. D. Harris, and C. E. Slade. These three defendants asserted ownership of 397 acres off the north side of the grant, and as to them judgment went in favor of the plaintiff. The present contest is confined solely to the plaintiff, on the one hand, and to the three named defendants, on the other; and that view of the controversy seems to be conceded by counsel. As the case stands, the sole issue for future determination is as to the ownership of the 397 acres. The judgment should therefore be permitted to stand as to all the defendants, except W. H. Stark, B D. Harris, and C. E. Slade, and as to them it should be reversed, and the cause remanded for a new trial.

Ordered accordingly.